UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM SEPATIS, | Case No. C-08-02497 JCS |
| Plaintiff(s), | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Docket No. 26]** |
| v. | |
| CITY AND COUNTY OF SF, ET. AL., | |
| Defendant(s). | |

## I. INTRODUCTION

On April 14, 2008, Plaintiff William Sepatis ("Plaintiff") brought this action against the City and County of San Francisco, and two San Francisco Police Officers, Sean Frost and Frederick Schiff ("Defendants"). He seeks damages as a result of the tow of his vehicle and alleged violations of his constitutional rights. Defendants removed this action to federal court on May 16, 2008.

In his first cause of action pursuant to 42 U.S.C. § 1983, Plaintiff asserts that his rights were violated under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution by the individual Defendants. In his second cause of action under 42 U.S.C. § 1983, Plaintiff alleges that the City and County of San Francisco has a custom and practice that encourages and condones the unlawful towing of vehicles. He seeks damages as a result of the loss of his vehicle for the weekend, towing and storage fees, and emotional distress. He also seeks injunctive relief to remedy the unlawful practice and custom alleged in count two of the Complaint.

Defendants have filed this motion for summary judgment seeking a determination as a matter of law that Plaintiff's First and Fourth Amendment rights were not violated due to the fact that the San Francisco Police had probable cause to tow Plaintiff's vehicle as evidence of a possible hit-and-run accident. In addition, Defendants argue that Plaintiff has not presented evidence that Defendants had a retaliatory motive for towing his vehicle, in violation of his First Amendment rights.

Defendants further argue that the City of San Francisco's administrative process for contesting a vehicle tow satisfies due process, and that Plaintiff's Fourteenth Amendment due process claim fails due to the failure to produce evidence of selective enforcement in this case. Finally, Defendants argue that Plaintiff's claim against the City of San Francisco fails because Plaintiff has not presented evidence that the City has a policy or practice that resulted in the violation of his constitutional rights.

The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c). A hearing on the Motion was held on Friday, June 5, 2009 at 1:30 p.m. For the reasons stated below, the Motion is GRANTED.

## II.   BACKGROUND

### A.   Factual Background[1]

#### 1.   The December 15, 2006 Tow

William Sepatis is a San Francisco resident who has lived at the same address, 959 Ashbury Street, for over forty years. On Friday, December 15, 2006, a neighbor of Plaintiff, Miriam Serxner, walked into the Park Station and reported to the San Francisco Police Department ("SFPD") that her car had been damaged as a result of a hit-and-run accident. Her car was parked on the corner of Ashbury Street in San Francisco. A man named Brian Heath witnessed the accident and left a note on Ms. Serxner's parked car. In it, he included the license plate number of Plaintiff's vehicle, identifying it as the vehicle responsible for the damage to Ms. Serxner's vehicle. Plaintiff's vehicle was parked nearby in front of his home at 959 Ashbury Street. Ms. Serxner spoke with Officer Kane, station keeper at Park Station.

Officer Kane ran the license plate number and recognized the owner, William Sepatis, as a man who had called Park Station several times in the past to complain about speeding on Ashbury Street and had claimed to have sued another San Francisco Police officer, Lieutenant Dutto. Officer Kane knew Lieutenant Dutto because he had previously worked with him.

At Officer Kane's request, Defendant San Francisco Police Officers Sean Frost and Officer Kaczmarcyk responded to the scene of the accident and contacted Plaintiff at his home. Officer

---

[1]This factual background is taken from the parties' Joint Statement of Undisputed Facts unless otherwise noted.

2

Frost testified that he was only instructed by Officer Kane to obtain vehicle and insurance information at the scene. Officer Kaczmarcyk believed that "the situation could be abated if both parties exchanged information and *admitted to the accident*." Undisputed Fact No. 32 (emphasis supplied). Plaintiff cooperated with the officers by providing his vehicle license and registration and by allowing the officers to inspect his vehicle, but denied having been involved in a hit-and-run accident that day. The officers gave no indication that they knew Defendant when they spoke with him that day. The officers then contacted the alleged victim of the hit-and-run, Ms. Serxner, at her home, and gave her the insurance information. Officer Frost testified that he did not contact SFPD's Hit-and-Run Detail that afternoon because "there was no need to at that point." Scott Decl., Exh. A, 36:24-25. Frost explained that contacting Hit-and-Run is "not something that's done for incidents such as these." *Id.* at 37:1-3. Officer Frost testified, however, that in his experience, if the officers believe that a vehicle has been involved in a hit-and-run accident, "the vehicle is towed, and a hold is placed upon it." *Id.* at 58:8-12.

Back at Park Station, Officer Frost informed his supervisor, Sergeant Schiff, about the accident. Officer Frost explained that although they had received Plaintiff's insurance and registration information, he had not admitted that he was involved in the accident with Ms. Serxner's vehicle. Sergeant Schiff asked Officer Frost if he had observed any damage to the vehicles, interviewed witnesses, or taken any photographs. Officer Frost had not done so. Sergeant Schiff then ordered Frost to conduct a complete investigation of the hit-and-run accident. He did not order Officer Frost to tow Plaintiff's vehicle.

Sometime after Officer Frost had returned to the station, Plaintiff called Park Station and said that he had sued the San Francisco Police Department and mentioned Lieutenant Dutto by name. Officer Frost informed Sergeant Schiff about the substance of the telephone call.

Later that same night at Park Station, Sergeant Schiff instructed Officer Frost to tow the vehicle if he could establish reasonable cause to believe that it had been involved in a hit and run accident. Officer Frost returned to the scene of the accident to complete his investigation, including interviewing the witness, Brian Heath, who stated that he saw Plaintiff's vehicle hit Ms. Serxner's vehicle, viewing the damage to both vehicles, and taking photographs. Based upon the results of his investigation, Officer Frost decided to tow Plaintiff's car as evidence of a hit and run accident.

3

1  Officer Frost testified at his deposition that he believed it was his "duty" to tow Plaintiff's car as
2  evidence of a hit-and-run. Before ordering the tow, Officer Frost contacted Sergeant Schiff, who
3  authorized it. Sergeant Schiff testified that he authorized the tow because there was reasonable
4  cause to believe that Plaintiff's vehicle had been in a hit-and-run accident in violation of California
5  Vehicle Section 20002(a).[2]  Officer Frost also placed a hold on the vehicle for the Hit-and Run
6  Detail. Plaintiff was not provided with prior notification of the tow. After the towing of his vehicle,
7  Plaintiff made a "very short" phone call to Sergeant Schiff on the evening of the tow in which he
8  asked questions about why it had been towed. Sergeant Schiff explained to Plaintiff that he would
9  need to go to the Hit and Run Detail in order to retrieve his vehicle.

10  At some point on Monday December 18, 2006, the hold on Plaintiff's car was released.
11  Plaintiff retrieved his car that same day. According to Plaintiff, he incurred the loss of his vehicle,
12  fees for towing and storage and damage to his vehicle caused by the towing. Complaint at ¶ 13.
13  Plaintiff alleges that the car was towed as a pretext – the car was never inspected or examined or
14  held for any legitimate reason before its return. *Id.* at ¶ 10. The Hit-and-Run Detail did not conduct
15  any further investigation into the accident. No officer told Plaintiff that his car had been towed as a
16  result of his successful lawsuit in 2002. Plaintiff did not file an administrative grievance or contest
17  the towing of his vehicle until the filing of this lawsuit. Plaintiff was neither cited nor arrested for
18  his alleged involvement in the hit-and-run accident.

### 2. **Undisputed Facts Regarding SFPD Towing Policies**

20  It is the policy of the San Francisco Police Department to investigate all hit and run car
21  accidents involving death, injury or property damage. San Francisco Police Department General
22  Order 9.02, p.1, subsection I(A)(2); Undisputed Fact No. 40. If requested by a citizen, Police
23  Department Policy requires that officers investigate and prepare a "Traffic Collision Report and a
24  Hit and Run Record (SFPD 133)" for all hit and run vehicle accidents occurring in the city of San
25  Francisco. *Id.* at 2, subsection II(B)(1); Undisputed Fact No. 41. According to San Francisco Police
26  Department Policy, police officers have discretion to tow and place a hold on a towed vehicle for

---

[2]Although the fact of this testimony is undisputed, the truth of the statements is in dispute. Plaintiff disputes that these statements of Officer Schiff and Sergeant constitute the actual motive of the officers in ordering/carrying out the towing of Plaintiff's car.

4

investigative purposes, including the investigation of a hit and run vehicle accident. San Francisco Police Department General Order 9.06, subsection III(F)(1); Undisputed Fact No. 42.

### 3. Plaintiff's Prior Contacts with Park Station and SFPD

In the year 2000, Mr. Sepatis filed two lawsuits against the City and County of San Francisco and nine San Francisco Police Officers, including Lieutenant Dutto. These cases were consolidated. *See Sepatis v. City and County of San Francisco*, 217 F.Supp.2d 992 (N.D. Cal. 2002). The lawsuit arose out of two warrantless arrests of Plaintiff that occurred in 1999. *Id.* at 994. Plaintiff prevailed in his lawsuit. *See id.* (Order granting Plaintiff's motion for summary judgment; denying Defendants' cross-motions).

It is undisputed that none of the officers named in the 2000 lawsuit participated in the events leading up to the towing of Plaintiff's vehicle on December 15, 2006. Plaintiff has had no contact with the officers involved in the 2000 litigation since the conclusion of the action. Prior to December 15, 2006, Plaintiff had no contact with the individual police officers named in the present lawsuit. Between the conclusion of the 2000 lawsuit and the December 15, 2006 towing incident, Plaintiff had no contact with any SFPD officer.

Sergeant Schiff knew Plaintiff prior to December 15, 2006 because of Plaintiff's telephone calls in the past to Park Station threatening to sue SFPD officers working there. Sergeant Schiff was also aware that Plaintiff had sued Lieutenant Dutto in 2000. Although Sergeant Schiff knew Lieutenant Dutto and respected him professionally, the two did not see each other socially. On the date of the incident in this matter, December 15, 2006, Sergeant Schiff had not seen Lieutenant Dutto for several years.

Defendant Officer Frost began working at Park Station in November 2006. He knew Lieutenant Dutto from his days as a police cadet, where he worked at a time when Lieutenant Dutto was also stationed at Park Station. Prior to December 15, 2006, Officer Frost did not know Plaintiff. Officer Frost was aware of the 2000 lawsuit prior to the towing of the vehicle as a result of Plaintiff's telephone call to Park Station on December 15, 2006.

## III.   ANALYSIS

### A.   Legal Standard Applicable to Rule 56 Motions

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "*Celotex* requires that for issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact," that is, "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id.* at 323. On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255 (1986).

Because Plaintiff brings his § 1983 claims against both the City and County of San Francisco and individual Police Officers, the Court will first address whether, viewing the facts in a light most favorable to Plaintiff, any constitutional violations occurred, and second, whether the claims may proceed against each defendant. *See Dietrich v. John Ascuaga's Nugget,* 548 F.3d 892, 896 (9th Cir. 2008).

### B.   Plaintiff's First Amendment Claim Under 42 U.S.C. § 1983

Plaintiff's first claim against Officers Frost and Schiff under 42 U.S.C. § 1983 is for violating their First Amendment rights of freedom of expression. The First Amendment states: "Congress shall make no law respecting ... the right of the people ... to petition the Government for a redress of grievances." The right to petition "is implicit in '[t]he very idea of government, republican in form.'" *McDonald v. Smith*, 472 U.S. 479, 482, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985) (quoting *United States v. Cruikshank*, 92 U.S. 542, 552, 23 L.Ed. 588 (1876)). The right to petition

6

extends to all departments of the government. "The right of access to the courts is indeed but one aspect of the right of petition." *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

Defendants assert that they are entitled to summary judgment on Plaintiff's First Amendment claim for two reasons: first, they argue that there is no evidence that is sufficient to create a material issue of fact as to whether the SFPD individual Defendants' conduct was motivated by a desire to retaliate against Plaintiff for exercising his First Amendment rights, *i.e.*, his successful 2000 lawsuit; second, they argue that even if there is a fact question as to this underlying claim, Defendants are protected by qualified immunity because at the time of the relevant conduct, the question of whether a First Amendment retaliation claim may proceed where the officers had probable cause was unsettled under existing Supreme Court and Ninth Circuit precedent.

The Court agrees with Defendants and finds no First Amendment violation as a matter of law. Plaintiff has not presented sufficient evidence of a constitutional violation. Although Plaintiff has provided evidence of his successful lawsuit against the San Francisco Police Department, this lawsuit ended four years before the incident in this case, and was against different San Francisco Police Officers. At the hearing on this matter, counsel for Plaintiff argued that Plaintiff's telephone call to the police station on the evening of December 15, 2006, informing the officers of the earlier lawsuit, coupled with the fact of the lawsuit, provide sufficient evidence of retaliatory animus. For the reasons stated below, this evidence falls short of establishing a constitutional violation.

To prevail on a First Amendment retaliation claim, a plaintiff must show: "(1) that the plaintiff 'was engaged in constitutionally protected activity'; (2) that the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" *Worrell v. Henry*, 219 F.3d 1197, 1212 (citing *Mendocino Environment Center v. Mendocino County*, 192 F.3d 1283, 1300-1301 (9th Cir.1999). However, "[a] plaintiff may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives." *Mendocino Environment Center v. Mendocino County*, 14 F.3d 457, 464 (9th Cir.1994).

Plaintiff argues that there are numerous facts, not in dispute, which establish a retaliation claim against Defendants. He has produced evidence that Officer Kane recognized Plaintiff's name on the day of the incident. Scott Decl., Exh. D 11:4-15. Plaintiff also points to the evidence that the officer who authorized the tow, Sergeant Schiff, knew of Plaintiff from his prior contacts with the police station and was aware of the lawsuit against Lt. Dutto. As Sergeant Schiff testified at his deposition, "it's common knowledge at the Park Station" that Plaintiff had prevailed in his 2000 lawsuit against Lieutenant Dutto. *See* Amended Declaration of Meredith B. Osborn in Support of Defendants' Motion for Summary Judgment, Exh. D, 54:8-16. Sergeant Schiff also testified regarding Plaintiff's reputation at Park Station: "Mr. Sepatis has called the station on a number of occasions, and I can't ever think of a phone call that he made where he didn't threaten to sue officers, or threaten officers in one way or another, not necessarily physically, but usually legally." *Id.* at 51:9-17. Plaintiff also argues that the officers at Park Station on December 15, 2006, were reminded of this prior lawsuit by Plaintiff's telephone call sometime that evening after the hit-and-run had occurred. According to Plaintiff, this telephone call – and not the need to conduct further investigation – was the real reason for the decision to tow Plaintiff's vehicle.

At first glance, it would appear that the above evidence, viewed in a light most favorable to Plaintiff, could establish a First Amendment retaliation claim. Plaintiff's successful lawsuit, coupled with his repeated telephone calls to Park Station, might give rise to an inference of retaliatory animus. Plaintiff's claim fails, however, due to Plaintiff's inability to meet the second requirement of a First Amendment Claim – that "[Defendants'] desire to cause the chilling effect was a but-for cause of [Defendants'] actions." *Skoog v. County of Clakamas,* 469 F.3d 1221, 1231-32 (9th Cir. 2006). The officers' knowledge of Plaintiff's *four-year-old* lawsuit against other SFPD officers and awareness of his telephone calls to the station are not sufficient because there is no evidence in the record that this knowledge was the reason for the decision to investigate and ultimately tow Plaintiff's vehicle.

At oral argument, Plaintiff argued at length that it was not the four-year-old lawsuit, but rather Mr. Sepatis' telephone call to the station on the evening of December 15, 2006, that prompted the officers to return to the scene of the accident and ultimately tow Plaintiff's vehicle. Plaintiff argues that the investigation had been completed (and that officers decided not to tow Plaintiff's car)

8

before this call, and that, having been reminded of this 2000 lawsuit by the call, Defendants retaliated by reopening the investigation and towing his vehicle.  Plaintiff points to no evidence, however, that the investigation had been completed after the officers' first visit to the accident scene.

In fact the evidence only supports the contrary conclusion – that the investigation was not completed at the time of the first visit to the accident scene.  When asked at oral argument what evidence supports Plaintiff's theory, counsel could only point to the fact that the officers left the scene initially without towing the car.  Plaintiff argues that this fact is proof that the investigation was complete and a decision not to tow had been made.  The Court disagrees.  There is no evidence before the Court that police officers in San Francisco complete all criminal investigations in one visit to a crime scene, or that such was the case in this matter.  Indeed, there are no facts in the record from which a reasonable inference could be made that *any* decision abut whether to tow had been made after the first visit to the scene by SFPD.  The officers had not taken photographs or inspected the vehicles.  Accordingly, the fact that during an investigation, Plaintiff notified the officers of a four-year-old lawsuit, does not support an inference that any subsequent parts of the investigation were retaliatory.  Plaintiff's argument that the decision to return to the scene was based upon retaliatory animus rather than a need to conduct further investigation is based upon speculation, not evidence.  While Plaintiff is correct that all reasonable inferences must be drawn in his favor, there is no evidence in the record from which to draw the inference that the officers "decided not to tow the vehicle" after the first visit and then decided to tow Plaintiff's vehicle in retaliation after Plaintiff's phone call.

Moreover, the lawsuit (and exercise of Plaintiff's First Amendment rights) occurred over four years before Plaintiff's vehicle was towed.  While the passage of four years since the conclusion of Plaintiff's lawsuit is not dispositive of the issue, it certainly weakens its value as evidence of retaliation.  In cases in the employment context where retaliation was found, the retaliatory conduct occurred in close temporal proximity to the exercise of the protected First Amendment activity, within three months at the most.  *See* e.g., *Thomas v City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) (events occurring within seven weeks sufficiently proximate to support an inference of causation in a First Amendment retaliation employment case) (citations omitted); *see also, Keyser v. Sacramenmto City Unified School District*, 265 F.3d 741, 752 (9th Cir. 2001) (in

9

employment law context, two-year period between exercise of rights and the allegedly discriminatory conduct was too long to raise an inference of retaliation). Plaintiff must do more than present circumstantial evidence supporting a "weak inference of retaliation" in order to survive summary judgment. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008) (granting summary judgment for defendants, noting that there is "almost always a weak inference of retaliation whenever a plaintiff and a defendant have had previous negative interactions."). The undisputed facts establish weak evidence, at best, of retaliation.

Relying upon *Hartman v. Moore*, 547 U.S. 250 (2006), Defendants also argue that they are entitled to summary judgment on the First Amendment claim based upon the fact that the officers had probable cause to tow Plaintiff's vehicle. In *Hartman*, the Supreme Court held that when a plaintiff claims that he was prosecuted as a result of his exercise of a First Amendment right, he must plead and prove an absence of probable cause. *Id.* at 265-266. Because Plaintiff cannot prove an absence of probable cause in this case, Defendants argue that summary judgment must be granted in their favor. Plaintiffs argue, on the other hand, that whether the police had probable cause to tow the vehicle is not dispositive of the issue in the present case because establishing an absence of probable cause is not an element of the claim in cases such as this – a case involving no criminal prosecution. As Plaintiff correctly points out, the Ninth Circuit has interpreted *Hartman* as applicable in only a subcategory of retaliation cases – those where a criminal prosecution results. *See Skoog* 469 F.3d 1221, 1234-35 (9th Cir. 2006) (holding no requirement to plead and prove absence of probable cause in an "ordinary retaliation claim" and explaining that proof of an absence of probable cause is necessary in retaliatory prosecution cases due to the complexity of causation in such cases).

Here, Plaintiff's vehicle was towed and impounded; Plaintiff was not criminally prosecuted. Therefore, Plaintiff argues that the existence of probable cause is irrelevant and the Court should look only to the evidence of the successful lawsuit and telephone calls to the police station as the cause of the towing.

The Court finds neither parties' statement of the law to be entirely correct. However, even assuming Plaintiff's statement of the law in the Ninth Circuit is correct, and the existence of probable cause does not negate a retaliation claim in a non-prosecution case such as this one, the

Supreme Court has clearly stated that probable cause nevertheless has "high probative force" and "probable cause or its absence will be at least an evidentiary issue in practically all such cases." *Hartman*, 547 U.S. at 265.  And in a case such as this, where the evidence of retaliatory motive is extremely weak – the reason for the alleged retaliation having occurred four years prior to the alleged retaliation – then the presence of probable cause is that much more probative.  As the Ninth Circuit explained in *Dietrich v. John Ascuaga's Nugget*:

> There is almost always a weak inference of retaliation whenever a plaintiff and a defendant have had previous negative interactions; holding that this case survives summary judgment would provide almost no 'protect[ion for] government officials from the disruption caused by unfounded claims.'

548 F.3d 892 at 901 (9th Cir. 2008).  The Ninth Circuit concluded that the case had "very strong evidence of probable cause and very weak evidence of a retaliatory motive" and thus "falls outside the reach of *Skoog*."  *Id.*

The Court is persuaded by the reasoning of *Skoog* and *Dietrich*, and concludes that probable cause is relevant to the causation analysis in a First Amendment retaliation case, even one such as this – where no criminal prosecution is involved.

It is undisputed that Plaintiff was a suspect in a hit-and-run accident on December 15, 2006.  Further, it is undisputed that Plaintiff denied responsibility for the accident, despite the presence of a witness to the accident.  The San Francisco Police had discretion and probable cause to place a hold on the vehicle in order to conduct a further investigation into the accident pursuant to California Vehicle Code § 20002.  Moreover, it is undisputed that the officers at the scene who conducted the investigation into the accident that day, and the officer who authorized the towing of Plaintiff's vehicle, had nothing to do with Plaintiff's successful earlier lawsuit.

This evidence of probable cause to tow, along with the weak inference of retaliation for a four-year-old lawsuit, falls far short of establishing a genuine issue of disputed fact as to the retaliation claim.

Plaintiff argues as further evidence of retaliation that it is the policy of San Francisco Police "to not investigate vehicle accidents involving only property damage."  Plaintiff's Opposition at 5.  Plaintiff cites to San Francisco Police Department General Order 9.02 pertaining to Non-Injury Vehicle Accidents in support of its argument that the officers at issue here deviated from standard

11

1  police department policy as evidence of retaliatory animus.  Plaintiff is mistaken.  Under General
2  Order 9.06, it is the policy of San Francisco police to investigate all hit-and-run accidents, including
3  those involving only property damage.  *See* General Order 9.06; *see also*, Undisputed Fact #40.
4       Finally, Plaintiff argues that retaliation can almost be inferred from the fact that the Hit and
5  Run Detail ultimately declined to conduct any further investigation of Plaintiff's vehicle after the
6  vehicle had been towed.  The fact that no further action was taken against Plaintiff is not sufficient
7  to establish retaliation.  Even viewing the evidence in a light most favorable to Plaintiff, and
8  drawing all inferences in his favor, there is not enough evidence of retaliatory animus to support a
9  First Amendment claim.  Defendants' motion for summary judgment on this claim is GRANTED.

     **C.**     **Plaintiff's Fourth Amendment Claim**

11      Plaintiff's Fourth Amendment claim against the individual defendants fails for similar
12 reasons to those discussed above.  As a threshold matter, Plaintiff does oppose Defendants'
13 summary judgment motion with respect to the Fourth Amendment claim.
14      The Court concludes that this claim cannot survive summary judgment.  It is undisputed that
15 there was probable cause to believe that Plaintiff's vehicle had been involved in a hit-and-run
16 accident on December 15, 2006 in violation of California Vehicle Code Section 20002(a) and that
17 Defendants therefore had discretion to tow Plaintiff's vehicle under California Vehicle Code section
18 22655(a).  For this reason, and due to Plaintiff's non-opposition to Defendants' motion with respect
19 to this claim, Defendants' motion for summary judgment as to the Fourth Amendment claim against
20 the individual officers is GRANTED.

     **D.**     **Plaintiff's Fifth and Fourteenth Amendment Due Process Claims**

22      Plaintiff's Due Process Claims fail as a matter of law for two reasons.  First, the Court
23 concludes that Plaintiff was not deprived his property without due process of law. Second, the
24 undisputed facts demonstrate that there was no "selective prosecution" in this case.
25      Several Ninth Circuit cases delineate the procedures that the police are constitutionally
26 required to follow when towing and impounding a person's vehicle pursuant to statute.  The cases
27 consistently hold that individuals are not entitled to notice prior to the towing of their vehicles in
28 circumstances set forth by statute, including whether a vehicle has been in a suspected hit-and-run
accident, so long as a prompt post-towing notice and hearing are provided.  *See e.g., Scofield v.*

1  *Hillsborough*, 862 F.2d 759 (9th Cir. 1988) (pre-towing notice for car unregistered for more than one
2  year not required; however, opportunity for post-towing hearing required in order to satisfy due
3  process); *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1323-25 (9th Cir. 1982) (due process
4  satisfied where post-tow hearing occurs within 48-hours after impounding vehicle for illegal
5  parking); *Soffer v. City of Costa Mesa*, 798 F.2d 361, 362-63 (9th Cir. 1986) (pre-tow hearing is not
6  required before impounding vehicle for violating municipal parking ordinance).

7        Here, individuals whose vehicles are towed in San Francisco have a post-deprivation remedy
8  they may utilize in order to challenge the lawfulness of the administrative tow. Defendants argue
9  that there is an administrative procedure that Plaintiff could have used to challenge the lawfulness of
10 the police conduct. *See* Declaration of Meredith Osborn, Exhibit A, "Summary Outline for S.F.P.D.
11 Tow Hearing Procedures." Specifically, before retrieving Plaintiff's vehicle, he would have
12 received a notice, called a "Tow Release" explaining that he was entitled to a hearing in order to
13 determine the legality of the tow. *Id.* In addition, there are notices posted in the public area of
14 Room 154, "the Stop Window." *Id.* These signs inform the public: "If your vehicle has been towed
15 by the San Francisco Police Department for any reason, you are permitted to a TOW HEARING to
16 determine the validity of that tow." *Id.* The notice provides additional detail regarding the post-tow
17 hearing procedures, including the right to appeal to a supervisor, and if unsuccessful, the possibility
18 of filing a claim with the City Attorney against the City of San Francisco. *Id.* The Court finds that
19 these post-tow administrative procedures satisfy any due process concerns with respect to a vehicle
20 tow after a hit-and-run accident. In any event, it is undisputed that Plaintiff did not avail himself of
21 *any* post-tow procedures. Undisputed Fact No. 62.[3]

22       Second, the undisputed evidence establishes that there was no selective enforcement of
23 Plaintiff. In order to show selective enforcement of the Fourteenth Amendment's Equal Protection
24 Clause, a plaintiff must demonstrate that: "(1) others generally are not prosecuted for the same

---

[3] This undisputed fact raises another issue and ground on which to grant summary judgment on the due process claim. It appears that Plaintiff lacks standing to allege any constitutional injury relating to the adequacy of the post-tow hearing procedures. The only injury he suffered – the loss of his vehicle for the weekend – cannot be said to have been caused by the unavailability or inadequacy of the post-towing procedures in San Francisco. *See United States v. Hugs*, 109 F.3d 1375 (9th Cir. 1997) (plaintiffs lacked standing to challenge manner of administration of federal statute when they failed to apply for permit that would trigger its administration; however, plaintiffs not barred from challenging facial validity of statute).

13

conduct and (2) the decision to prosecute this defendant was based upon impermissible grounds such as race, religion or exercise of constitutional rights." *U.S. v. Alisal Water Corp.*, 114 F.Supp.2d 927, 936 (N.D. Cal. 2000) *citing Church of Scientology v. Commissioner of Internal Revenue*, 823 F.2d 1310, 1321 (9th Cir. 1987). It is not enough for Plaintiff to allege that similarly situated individuals' cars were not towed; he must present *evidence* of such treatment. *See e.g.*, *Sherman v. Yolo County Chief Probaton Officer*, 2007 WL 2429712, *6 (E.D.Cal. 2007). Plaintiff has not demonstrated that similarly situated individuals were treated differently, *i.e.*, that other residents of San Francisco who are suspected of having been in a hit-and-run accident causing vehicle damage did not have their cars towed. The only evidence before the Court on this issue is the testimony of Sergeant Schiff that he has authorized many tows under similar circumstances. Undisputed Fact No. 54. Indeed, Plaintiff cites to Sergeant Krimsky's deposition testimony in his opposition to Defendant's Motion, wherein he testified that vehicles are towed and impounded for the Hit and Run Detail "as a matter of course" when the police are investigating misdemeanor hit-and-run vehicle accidents involving misdemeanor arrests, for example. *See* Declaration of John Houston Scott in Opposition to Defendant's Motion for Summary Judgment, Exh. E at 19:1-7. In situations where there is a hit-and-run accident and a vehicle impound, but no arrest (such as the present case), "some of them could wind up becoming a follow-up, some of them could wind up simply being, the hold has been released, turn it back over to patrol for follow-up." *Id.* at 19:13-18. Therefore, the undisputed evidence before the Court is that cars are routinely towed and impounded after hit-and-run accidents in San Francisco, even those involving only property damage. Plaintiff has failed to rebut this evidence in order to establish that he was unconstitutionally singled out for differential treatment.

### E. Qualified Immunity

The individual Defendants argue that even assuming a constitutional violation occurred, they are entitled to qualified immunity and cannot be held responsible for their conduct under *Saucier v. Katz*, 533 U.S. 194 (2001). The Court agrees.

#### 1. Standard Governing Qualified Immunity

Under the doctrine of qualified immunity, even if a constitutional violation occurred, governmental officials are immune if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982). To determine whether a defendant is entitled to qualified immunity, courts must first ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If not, the qualified immunity analysis ends here. *Id.* at 201. On the other hand, "if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Id*.

The inquiry as to this second question must be "particularized." *Id*. It is not enough that the general rule is established. *Id*. Rather, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Id*. at 202 (emphasis added). The Supreme Court has cautioned that courts should afford "deference to the judgment of reasonable officers on the scene" and should not use "20/20 hindsight vision." *Id*. at 205. Thus, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present are entitled to immunity.'" *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511 (1985)).

**2.     Applicability of Qualified Immunity to the Facts of this Case**

As discussed above, the Court finds no constitutional violation on the undisputed facts of this case. The qualified immunity analysis, therefore, ends there at the first step in the analysis discussed above. Even if Plaintiff had presented sufficient evidence of a constitutional violation, however, the Court would find that the Defendants are entitled to qualified immunity.

The second question for the Court to address in the qualified immunity analysis is whether the right was clearly established at the time the Defendants acted. *Skoog*, 469 F.3d at 1229. If the answer to that question is yes, then the Court must analyze whether the Defendants could have reasonably believed that their conduct did not violate a clearly established constitutional right. *Id.*

The Court concludes that the law with respect to "the right of an individual to be free of police action motivated by retaliatory animus but for which there was probable cause" was not clearly established at the time of the incident in this case. *Skoog*, 469 F.3d at 1235. Precisely what role probable cause should play in the analysis of a First Amendment retaliation claim was unsettled in December 2006. In April 2006, the United States Supreme Court in *Hartman v. Moore*, held that the absence of probable cause is an element that plaintiffs are required to prove in First Amendment

15

1 retaliatory prosecution cases.  Thereafter, and about three weeks before the incident in the present
2 case, the Ninth Circuit issued its decision in *Skoog*, *supra*.  There, the Ninth Circuit described the
3 Supreme Court's decision in *Hartman* as pertaining to a "particular subcategory of retaliation
4 claims: retaliatory prosecution claims." *Id.* at 1233.  The court distinguished *Hartman* on the
5 grounds that the case did not involve a retaliatory prosecution; rather, it involved a retaliatory
6 citation that had been issued to the Plaintiff, allegedly due to the exercise of First Amendment rights.
7 The court held "failure to plead and prove probable cause is not dispositive with regard to ordinary
8 retaliation claims." *Id.* at 1234.  In *Skoog*, although a close question, the Ninth Circuit concluded
9 that there was sufficient evidence to support a finding of probable cause, and strong evidence of a
10 retaliatory motive.  However, the court explained, "the right of an individual to be free of police
11 action for which retaliation is a but-for cause even if probable cause exists for that action" was not
12 settled. *Id.* at 1235.  In 2008, in an effort to reconcile the case law in this area, the Ninth Circuit
13 clarified in *Dietrich v. Ascuaga's Gold Nugget*, that the existence of probable cause has "high
14 probative force" even in "ordinary" retaliation cases, *i.e.*, those not involving a criminal prosecution.
15 *Dietrich*, 548 F.3d 892.

16 While the Court finds the present case to be more akin to the facts of *Skoog* than *Hartman*,
17 due to the fact that this case does not involve a criminal prosecution, the Court concludes that the
18 law on this point was not clearly settled in December of 2006 when the Defendants caused
19 Plaintiff's car to be towed and impounded.  Indeed, the law in this area still remains somewhat
20 unclear. *See Dietrich*, 548 F.3d at 901, n.5 (noting circuit split regarding the issue of whether a
21 plaintiff is required, as an element of the claim, to prove an absence of probable cause to survive
22 summary judgment); *see also, Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2007) (extending the
23 probable cause requirement of *Hartman* to Fourth Amendment false arrest cases).

24 It is undisputed that the officers had probable cause to tow Plaintiff's car on December 15,
25 2006.  It is also undisputed that police officers have discretion to tow a vehicle that is suspected to
26 have been involved in a hit and run accident.  Because the law with respect to whether Plaintiff had
27 a right to be free of retaliatory police action, despite the existence of probable cause to tow his car in
28

1 this "ordinary retaliation claim" was uncertain at the time of this incident, the individual Defendants
2 are entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.[4]

### F. Municipal Liability for Section 1983 Claims

Plaintiff asserts his section 1983 claims against the City of San Francisco on the grounds that the City, through its police department, "authorized the tow" of Plaintiff's vehicle on one occasion. Plaintiff's Opposition at 14. Plaintiff argues that Sergeant Schiff "was the final decision maker for the defendant City and County of San Francisco" and that he "ratified this unconstitutional act." *Id.* Because a police sergeant authorized a police officer's unconstitutional recommendation to tow Plaintiff's vehicle, Plaintiff argues that this act is attributable to the City and County of San Francisco under *Monell*.[5] The Court disagrees.

The Court concludes that even if Plaintiff's account of the December 2006 towing incident is accurate, the City is entitled to summary judgment on Plaintiff's § 1983 claims because Plaintiff has not presented evidence sufficient to establish a material issue of fact that the alleged violations of his rights by the individual officers were conducted pursuant to a policy, custom or procedure, as required under *Monell*. Apart from the allegations of the Complaint, Plaintiff presents no arguments and no evidence that could support any custom or practice of authorizing car towing for illegitimate purposes. Under *Monell*, a municipality cannot be held liable for constitutional injuries inflicted by its employees on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose

---

[4]The Court also finds that the Defendants are entitled to qualified immunity on the Fourth Amendment and Due Process claims. Even assuming that a constitutional violation occurred here, a reasonable officer would not have known that his conduct was unlawful. Plaintiff points to no clearly established law that officers may not tow a vehicle, consistent with the Fourth Amendment, when there is probable cause to suspect the vehicle of having been in a hit-and-run accident. Similarly, Plaintiff cites to no clearly established law that the post-tow procedures in San Francisco violate Due Process.

[5]In Plaintiff's Complaint he alleges that "this towing occurred as a result of a custom and practice within the San Francisco Police Department that encourages and condones the unlawful towing of vehicles for illegitimate reasons. In addition, the plaintiff further alleges that this towing occurred as a result of a failure to properly train and supervise police officers regarding the laws relating to the lawful towing of vehicles." Complaint at ¶ 19. In his opposition to the present motion, however, he makes no arguments regarding this alleged custom or practice, and provides the Court with no evidentiary support.

edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under 1983." *Id.* at 694.

A plaintiff seeking to establish municipal liability under section 1983 may do so in one of three ways:  1) the plaintiff may demonstrate that a municipal employee committed the alleged constitutional violation "pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" 2) the plaintiff may demonstrate that the individual who committed the constitutional violation was an official with "final policy-making authority and that the challenged action itself thus constituted an act of official government policy;" or 3) the plaintiff may demonstrate that "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Here, there is no evidence that the alleged violations were either committed by an individual with final policy-making authority or ratified by such an individual. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-82 (1986).   Plaintiff argues in a conclusory manner that "Sgt. Schiff was the final decision maker for defendant City and County of San Francisco."  Plaintiff's Opposition at 14. Plaintiff provides no evidence in support of the conclusion that a police sergeant was the final policy making authority.

As a result, to reach the City of San Francisco, Plaintiff must raise a genuine issue of fact with respect to the existence of a policy or custom that authorized vehicle tows by the Police Department for illegitimate – in this case retaliatory – reasons.  This he does not do.

The City of San Francisco has a formal policy, set forth in General Order 9.02, regarding the towing of vehicles suspected of having been involved in hit-and-run accidents. *See* Scott Decl., Exh. J ("General Order 9.02, p.4, subsection H).  Plaintiff acknowledges that Defendants had discretion to tow Plaintiff's vehicle in accordance with General Order 9.02.   He argues, however, that in exercising that discretion, Officer Frost had an improper motive *i.e.*, as retaliation for Plaintiff's lawsuit against San Francisco Police Officers nearly five years earlier. General Order 9.02 provides: "TOWS. Arrange for tows and direct traffic if necessary."  *Id.*  The policies set forth in General Order 9.02, are not, however, sufficient to give rise to municipal liability because they do not establish an unconstitutional policy. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822 (1985)

18

(holding that "where the policy relied upon is not itself unconstitutional, considerable more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the policy and the constitutional deprivation."). Absent a formal government policy that is unconstitutional, Plaintiff must demonstrate the existence of a "longstanding practice or custom" of retaliatory vehicle tows. *Trevino*, 99 F.3d at 918. As the Ninth Circuit explained in *Trevino*,

> The custom must be so persistent and widespread that it constitutes a permanent and well-settled city policy. . . . Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.

*Id.* In *Trevino*, the Ninth Circuit affirmed summary judgment in favor of the defendant municipality where the plaintiff alleged that the city council had a custom of paying officers' punitive damages in excessive force cases. *Id.* at 916. The court found that the evidence fell "far short" of establishing a widespread custom, for the purposes of *Monell*, where the city council had paid officers' punitive damages in eleven or twelve cases while the action was pending but in no cases up to the date on which the excessive force was allegedly used. *Id.* Similarly, in *Meehan v. City of Los Angeles*, the Ninth Circuit held that two incidents involving alleged unconstitutional harassment did not support the existence of a custom sufficient to establish municipal liability under *Monell*. *Meehan v. City of Los Angeles*, 825 F.2d 102, 106 (9th Cir. 1988).

Plaintiff has provided no declarations or evidence of other instances of the type of misconduct that is alleged to have occurred in this case. Accordingly, Plaintiff's *Monell* claim against the City of San Francisco fails as a matter of law.

## III.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED. The Clerk shall close the file.

IT IS SO ORDERED.

Dated: June 24, 2009

_____
JOSEPH C. SPERO
United States Magistrate Judge